IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| BOARD OF TRUSTEES,<br>SHEET METAL WORKERS'<br>LOCAL 9 PENSION TRUST, *et al.*<br><br>        Plaintiffs,<br><br>v.<br><br>AMERICAN VETERAN HEATING & AIR,<br><br>        Defendant. | Case No. 1:23-cv-03458-NYW-SBP |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

Plaintiffs,[1] pursuant to Fed. R. Civ. P. 55 and by their attorneys Slevin & Hart, P.C., hereby submit this Memorandum in Support of their Motion for Default Judgment against Defendant American Veteran Heating & Air ("Defendant") and respectfully request that the Court enter a final judgment for Plaintiffs and against Defendant in the amount of at least $220,753.49.

**I.     Factual Background**

1.     In this action, which arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and the Labor Management Relations Act ("LMRA"), Plaintiffs seek a money judgment awarding delinquent contributions, accrued interest, liquidated damages,

---

[1]     Plaintiffs are the following:  (i) the Board of Trustees of the Sheet Metal Workers' Local 9 Pension Trust (the "Pension Fund"); (ii) the Board of Trustees of the Colorado Sheet Metal Workers' Local 9 Health Fund (the "Health Fund"); (iii) the Joint Apprenticeship and Training Committee of the Colorado Sheet Metal Workers Training Fund (the "Training Fund"); (iv) the SMART Local 9 Vacation Plan (the "Vacation Plan"); (v) the Colorado Sheet Metal Industry Fund (the "Industry Fund"); and (vi) the SMACNA Colorado Drug Testing Fund (the "Drug Testing Fund").  The Pension Fund, Health Fund, and Training Fund are referred to collectively as the "ERISA Funds."  The ERISA Funds, Vacation Plan, Industry Fund, and Drug Testing Fund are referred to collectively as the "Funds."

1

and attorneys' fees and costs owed by Defendant to Plaintiffs, pursuant to ERISA §§ 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145, LMRA § 301, 29 U.S.C. § 185, and Defendant's collective bargaining agreement ("CBA").  (*See* Complaint, ECF #1 ("Compl.")).

2.  Each of the ERISA Funds is a multiemployer jointly administered labor-management employee benefit plan created and maintained pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186 (c)(5), and a "multiemployer plan" as defined in Section 3(37) of ERISA, 29 U.S.C. § 1002 (37). The ERISA Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and employee welfare benefit plans or employee pension benefit plans within the meaning of Sections 3(1) or 3(2) of ERISA, 29 U.S.C. §§ 1002(1) or (2), maintained for the purpose of providing retirement, medical, accident, disability, or apprenticeship and related benefits to eligible participants and their beneficiaries.  (*See* Compl. ¶ 7; Ex. 1 - Declaration of Traci Mouritsen ("Mouritsen Dec.") ¶ 3).

3.  At all relevant times, International Association of Sheet Metal, Air, Rail, and Transportation Workers' Local 9 ("Local 9") has been the exclusive collective bargaining agent for a unit of Defendant's sheet metal employees.  (*See* Compl. ¶ 13; Mouritsen Dec. ¶ 4).

4.  At all relevant times, Defendant has been a party to a CBA with Local 9 covering Defendant's sheet metal employees.  (*See* Compl. ¶ 14; Mouritsen Dec. ¶ 5 & Ex. A).

5.  Defendant's CBA provides that it shall "remain in full force and effect until the 30th day of June 2019, and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date.  In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party."  (*See* Mouritsen Dec. ¶ 6 & Ex. A).

6. Neither party to Defendant's CBA has terminated it pursuant to that provision in the CBA and so the CBA, including Defendant's obligations to contribute to the Funds, continues in full force and effect. (*See* Mouritsen Dec. ¶ 7).

7. The CBA obligates Defendant to pay contributions to the Funds. (*See* Compl. ¶ 16; Mouritsen Dec. ¶ 8 & Ex. A).

8. Article 8, Section 24(c) of the CBA provides that contributions to the Funds are due no later than the twentieth (20th) day of each month following the month in which the covered work is performed. That section of the CBA further requires Defendant to transmit its contributions to the Funds "together with a remittance report containing such information, in such manner, and on such form as may be required by a fund's Board of Trustees." (*See* Compl. ¶ 17; Mouritsen Dec. ¶ 9 & Ex. A).

9. Article 8, Section 24(e) of the CBA provides that Defendant is bound to the provisions of the Agreement and Declaration of Trust of each of the ERISA Funds (collectively, the "Trust Agreements"), which are incorporated by reference into the CBA, and to the actions of the Trustees. Said Trust Agreements are terms of the CBA and are terms of the ERISA Funds' plans within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145. (*See* Compl. ¶ 18; Mouritsen Dec. ¶ 10 & Ex. A).

10. Article 8, Section 24(f) of the CBA provides that Defendant is bound to retain records and to permit auditors authorized by the Funds to inspect Defendant's payroll records to ensure compliance with its obligations to the Funds. (*See* Compl. ¶ 19; Mouritsen Dec. ¶ 11 & Ex. A).

11. Article 8, Section 24(h) of the CBA provides that, in the event Defendant defaults or becomes delinquent in any of its obligations to the Funds, Defendant shall be liable for such

penalties and costs as may be provided for by the Trust Agreements, resolutions, and policies of the respective Trustees, including, but not limited to, interest, liquidated damages, and all costs of collection including reasonable attorney's fees and accounting fees.  (*See* Compl. ¶ 20; Mouritsen Dec. ¶ 12 & Ex. A).

12. At all relevant times, the Collection Policy of each of the ERISA Funds, adopted by the Trustees pursuant to their authority under the ERISA Funds' respective Trust Agreements, to which Defendant is contractually bound, has provided that an employer's monthly contribution is delinquent if the completed remittance report and accompanying payment due the ERISA Funds are not received by the Funds after the twentieth (20th) day of the month following the month in which the covered work is performed. Said Collection Policy provides terms of the CBA and terms of the ERISA Funds' plans within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145.  (*See* Compl. ¶ 21; Mouritsen Dec. ¶ 13 & Ex. B).

13. At all relevant times, the Collection Policy of each of the ERISA Funds has provided that an employer delinquent in its monthly contributions to the Funds is liable for interest at the rate of ten percent (10%) per annum, liquidated damages at the rate of twenty percent (20%) of the delinquent contributions, and the Funds' attorneys' fees and costs.  (*See* Compl. ¶ 22; Mouritsen Dec. ¶ 14 & Ex. B).

14. Article 8, Section 12(B) of the CBA further provides that delinquent payments to the Vacation Plan shall be "subject to . . . interest, liquidated damages, attorney's fees and other costs of audit and collection on the same terms and in the same amount as provided by the collection policy of the SMART Local 9 Benefit Fund, as may be amended from time to time, and which policy is hereby incorporated by reference by the parties to this Agreement."  (*See* Mouritsen Dec. ¶ 15 & Ex. A).

15. The Funds must rely, in the first instance, upon the accuracy of the contributing employers, such as Defendant, in reporting hours worked and paid, and in properly calculating and reporting the contributions owed on behalf of their covered employees. (*See* Mouritsen Dec. ¶ 16).

16. Without accurate information, the Funds cannot determine the amount of the monthly contributions due to the Funds or the participants' eligibility for benefits. (*See* Mouritsen Dec. ¶ 17).

17. Plaintiffs filed suit because, at the time the Complaint was filed, Defendant had failed to timely pay its contributions owed to the Funds pursuant to the terms of the CBA, Trust Agreements, and Collection Policy for the months of July 2022 through November 2022, and January 2023 through March 2023 (the "Current Delinquencies"). (*See* Compl. ¶ 23).

18. Defendant continues to owe a total of $83,216.98 to the Fund for the Current Delinquencies, inclusive of interest through May 31, 2024 and liquidated damages but excluding attorneys' fees and costs, including the following amounts owed to each of the Funds (*see* Mouritsen Dec. ¶ 18):

    a. $21,784.43 to the Pension Fund, including $16,076.23 in principal contributions, $3,215.25 in liquidated damages, and $2,492.95 in interest through May 31, 2024; and

    b. $47,476.72 to the Health Fund, including $35,039.94 in principal contributions, $7,007.99 in liquidated damages, and $5,428.79 in interest through May 31, 2024; and

23053215v4

   c. $6,052.77 to the Training Fund, including $4,468.02 in principal contributions, $893.60 in liquidated damages, and $691.15 in interest through May 31, 2024; and

   d. $5,958.37 to the Vacation Plan, including $4,394.97 in principal contributions, $878.99 in liquidated damages, and $684.41 in interest through May 31, 2024; and

   e. $1,785.20 in principal contributions to the Industry Fund; and

   f. $159.49 in principal contributions to the Drug Testing Fund.

  19. In addition to the Current Delinquencies, the Complaint further alleges that "Defendant's obligation to make contributions to the Funds is ongoing and such contributions will become due and owing during the pendency of this litigation," as a result, Plaintiffs pled that their "claims in this case include any claims for any contributions that become delinquent, or become known to be delinquent, during the pendency of this case (the 'Subsequent Delinquencies')." (*See* Compl. ¶ 29).

  20. Defendant has, in fact, incurred Subsequent Delinquencies for which it is liable to Plaintiffs. In this regard, subsequent to the filing of the Complaint, Defendant has failed to pay contributions to the Fund for any months for November 2023 to present. (*See* Mouritsen Dec. ¶ 19).

  21. Of those months, the only one for which Defendant even submitted remittance reports identifying the amount of work performed by its covered employees, and the amount of contributions owed to the Funds, was for November 2023, which identified that Defendant owed a total of $4,462.02 in contributions to the Funds for the month of November 2023, including the following (*see* Mouritsen Dec. ¶ 20):

   a.  $1,075.12 to the Pension Fund; and

   b.  $2,645.11 to the Health Fund; and

   c.  $333.72 to the Training Fund; and

   d.  $261.25 to the Vacation Plan; and

   e.  $136.38 to the Industry Fund; and

   f.  $10.44 to the Drug Testing Fund

  22. However, despite the fact that Defendant submitted payment of $4,462.02 to the Funds for its November 2023 contributions, that payment was returned because Defendant lacked sufficient funds in its bank account to cover the payment that was made. Accordingly, Defendant's November 2023 contributions to the Funds remain delinquent. (*See* Mouritsen Dec. ¶ 21).

  23. For each of the months of December 2023 through March 2024, Defendant has failed to submit either remittance reports or pay contributions to the Funds. Until such time as remittance reports are actually received for a given month, then the Funds' policy is to estimate that the contributions that are owed are the same as those that were reported for the most recent month for which reports were submitted. Accordingly, although the exact amount of contributions owed by Defendant for the Subsequent Delinquencies is currently unknown, the Funds estimate that Defendant owes $4,462.02/month in contributions to the Funds for each month between December 2023 and March 2024. (*See* Mouritsen Dec. ¶ 22).

  24. Case law confirms that it is appropriate to estimate Defendant's Subsequent Delinquencies because Defendant failed to submit remittance reports since November that would enable the Funds to determine the exact amount owed. *See, e.g., Trs. of the Elec. Welfare Tr. Fund v. America's Best Serv.*, No. GJH-19-2047, 2020 U.S. Dist. LEXIS 211090, at *11 (D. Md. Nov. 10, 2020) ("Courts have found reasonable estimates sufficient to establish damages where the

defendant has failed to provide the remittance reports needed to determine the exact amount owed."); *Bd. of Trs. v. 5 Star Washer Serv.*, No. 1:11cv0331 (CMH/JFA), 2011 U.S. Dist. LEXIS 128769, at *12 (E.D. Va. Sep. 14, 2011) ("When contributing employers fail to submit monthly remittance reports and fail to make the required contributions, the Funds must estimate the amounts owed to the Funds in any legal action to collect delinquent contributions."), *recommendation adopted*, 2011 U.S. Dist. LEXIS 125468 (E.D. Va. Oct. 28, 2011); *Finkel v. Union Elevator Corp.*, No. 07-CV-2227 (ENV)(MDG), 2011 U.S. Dist. LEXIS 49142, at *12 (E.D.N.Y. Mar. 14, 2011) ("It is appropriate for a plaintiff to use reasonable estimates when an employer has failed to submit payroll reports reflecting the amount of delinquent contributions."); *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 162 (D.D.C. 2009) ("In light of the defendant's failure to provide periodic reports or allow the plaintiffs access to the defendant's books and records, the court accepts the plaintiffs' estimation of delinquent contributions as both reasonable and as accurate as possible under the circumstances.").

25.     As a result, the Funds currently estimate that Defendant owes a total of $27,178.60 to the Fund for the Subsequent Delinquencies, inclusive of interest through May 31, 2024 and liquidated damages but excluding attorneys' fees and costs, including the following amounts owed to each of the Funds (*see* Mouritsen Dec. ¶ 23):

>  a.  $6,588.57 to the Pension Fund, including $5,375.60 in principal contributions, $1,075.12 in liquidated damages, and $137.85 in interest through May 31, 2024; and
>
>  b.  $16,209.82 to the Health Fund, including $13,225.55 in principal contributions, $2,645.11 in liquidated damages, and $339.16 in interest through May 31, 2024; and

      c.      $2,045.11 to the Training Fund, including $1,668.60 in principal contributions, $333.72 in liquidated damages, and $42.79 in interest through May 31, 2024; and

      d.      $1,601.00 to the Vacation Plan, including $1,306.25 in principal contributions, $261.25 in liquidated damages, and $33.50 in interest through May 31, 2024; and

      e.      $681.90 in principal contributions to the Industry Fund; and

      f.      $52.20 in principal contributions to the Drug Testing Fund.

26. However, as established above, the actual amounts that Defendant owes to the Funds as a result of its Subsequent Delinquencies cannot be precisely determined because Defendant has failed to even submit remittance reports to the Funds for any month since November 2023. Accordingly, with respect to the Subsequent Delinquencies, Plaintiffs respectfully request that any judgment include the Fund's ability to seek to supplement the amount owed as a result of the Subsequent Delinquencies if the Funds later learn, including in post-judgment discovery, that Defendant owes additional amounts to the Funds for the Subsequent Delinquencies.

27. Finally, in addition to the above amounts owed to the Fund for the Current and Subsequent Delinquencies, the Complaint further alleges that Plaintiffs were "conducting an audit of Defendant's payroll records as authorized by Article 8, Section 24(f) of the CBA, for the period January 1, 2020, through March 31, 2023 (the 'Audit')" and that "the Audit will reveal that Defendant has been delinquent in paying its required contributions to the Funds above and beyond the known Current Delinquencies (the 'Audit Delinquencies')." (*See* Compl. ¶ 28).

28. Subsequent to the filing of the Complaint, the Funds completed the Audit, which identified that Defendant does, in fact, owe Audit Delinquencies. Specifically, Defendant

continues to owe a total of $91,095.13 to the Fund for the Audit Delinquencies, inclusive of interest through May 31, 2024 and liquidated damages but excluding attorneys' fees and costs, including the following amounts owed to each of the Funds (*see* Mouritsen Dec. ¶¶ 24-27 & Ex. C):

    a.    $19,720.36 to the Pension Fund, including $14,114.66 in principal contributions, $2,822.93 in liquidated damages, and $2,782.77 in interest through May 31, 2024; and

    b.    $57,615.23 to the Health Fund, including $40,586.91 in principal contributions, $8,117.38 in liquidated damages, and $8,910.94 in interest through May 31, 2024; and

    c.    $4,885.88 to the Training Fund, including $3,480.66 in principal contributions, $696.13 in liquidated damages, and $709.09 in interest through May 31, 2024; and

    d.    $7,341.86 to the Vacation Plan, including $5,191.57 in principal contributions, $1,038.31 in liquidated damages, and $1,111.98 in interest through May 31, 2024; and

    e.    $1,314.34 in principal contributions to the Industry Fund; and

    f.    $217.46 in principal contributions to the Drug Testing Fund.

    29.    As established above, in addition to the other amounts addressed herein, ERISA § 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E), also makes Defendant liable for Plaintiffs' "reasonable attorney's fees and costs of the action, to be paid by the defendant . . . ." Defendant further agreed to be bound to the Collection Policy which obligates Defendant to pay Plaintiffs' attorneys' fees. Accordingly, Defendant also owes attorneys' fees and costs in the amount of $19,262.78. (See Ex. 2 – Declaration of Richard S. Siegel, Esq. ("Siegel Decl.") ¶¶ 6-9 & Ex. A & B)

30. In total, including the amounts owed by Defendant for the Current Delinquencies, Subsequent Delinquencies, Audit Delinquencies, and Plaintiffs' attorneys' fees and costs, Defendant owes a total of $220,753.49 to the Funds as follows:

   a. $83,216.98 for the Current Delinquencies; and

   b. $27,178.60 for the Subsequent Delinquencies; and.

   c. $91,095.13 for the Audit Delinquencies; and

   d. $19,262.78 for Plaintiffs' reasonable attorneys' fees and costs.

## II. Argument

Plaintiffs commenced this action by filing their Complaint on December 30, 2023. (ECF #1). On January 16, 2024, Plaintiffs filed a Waiver of the Service of Summons executed by Brandy Conway on behalf of Defendant American Veteran Heating & Air ("Defendant"). (ECF #5). As Defendant was asked to waive service on January 5, 2024, Defendant's response to the Complaint was due by March 5, 2024. (*Id.*). On March 5, 2024, Brandy Conway filed a *pro se* request for an extension of time for Defendant to respond to the Complaint. (ECF #6). On March 6, 2024, the Court extended Defendant's time to respond to the Complaint until April 4, 2024. (ECF #9). On April 3, 2024, Defendant purported to file a *pro se* Answer to the Complaint. (ECF #11). On April 5, 2024, the Court *sua sponte* entered an Order striking Defendant's Answer because, as a company, Defendant cannot appear *pro se*. In that same Order, the Court extended Defendant's time to file a responsive pleading through counsel until April 26, 2024. (ECF #12). Following the Court's Order striking Defendant's *pro se* Answer, no counsel has entered an appearance on behalf of Defendant and Defendant has failed to plead or otherwise defend within the time allowed. On May 1, 2024, the Clerk entered Default against Defendant. (ECF #19). Accordingly, under Fed. R. Civ. P. 55(b)(2), default judgment should now be entered against Defendant.

With respect to delinquent contributions, ERISA § 515 provides:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. The remedies for a violation of ERISA § 515 are contained in ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), which provides that, when an employer, such as Defendant, fails to timely submit contractually-required contributions, and Plaintiffs file a lawsuit to recover the unpaid contributions, they are entitled to the following:

a. The unpaid contributions;

b. Interest on the delinquent contributions at the rate set by the Funds;

c. An amount equal to the greater of: (i) a second assessment of interest on the delinquent contributions at the above rate; or (ii) liquidated damages up to twenty percent (20%) of the delinquent contributions; and

d. The attorneys' fees and costs incurred in pursuing the delinquent amounts, including the attorneys' fees and costs of this action.

In addition to being obligated to pay these amounts under ERISA, Defendant's CBA further requires Defendant to pay these amounts to the Funds. Pursuant to LMRA § 301(a), Defendant is liable to the Funds for breaching its CBA by failing to pay these required contributions and other amounts. Thus, Plaintiffs are entitled to judgment under both ERISA and the LMRA.

Accordingly, by failing to make contributions to the Funds and its other payments to Plaintiffs as required by to ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), the CBA, the Collections Policy, and LMRA § 301, 29 U.S.C. § 185, judgment should be entered in favor of Plaintiffs and against Defendant in the combined amount of $220,753.49, subject to Plaintiff's right to seek to

petition the Court to amend the judgment should Plaintiffs later determine, including in post-judgment discovery, that Defendant owes additional contributions to the Funds for the Subsequent Delinquencies. Plaintiffs further request post-judgment interest and attorneys' fees and costs incurred in executing a judgment against Defendant.

### III.     Conclusion

For the foregoing reasons, Plaintiffs request the Court to enter judgment for the Plaintiffs and against Defendant in the amount of at least $220,753.49, subject to Plaintiff's right to seek to petition the Court to amend the judgment should Plaintiffs later determine, including in post-judgment discovery, that Defendant owes additional contributions to the Funds for the Subsequent Delinquencies. This amount represents delinquent contributions and other payments owed, interest on the delinquent contributions and other payments owed, liquidated damages on the delinquent contributions, and attorneys' fees and costs incurred by the Plaintiffs in recovering these amounts. The Plaintiffs further requests that the Court award post-judgment interest on the judgment at the rate permitted by 29 U.S.C. § 1961 and attorneys' fees and costs incurred in executing the judgment.

Dated: May 29, 2024                                         Respectfully submitted,

                                                            /s/ Richard S. Siegel
                                                            Richard S. Siegel
                                                            SLEVIN & HART, P.C.
                                                            1625 Massachusetts Avenue, NW, Suite 450
                                                            Washington, DC  20036
                                                            Telephone: (202) 797-8700
                                                            Facsimile:  (202) 234-8234
                                                            rsiegel@slevinhart.com
                                                            *Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 29, 2024, the foregoing was served by U.S. Mail and by email upon the following party at the address it has registered with the Colorado Secretary of State.

American Veteran Heating & Air
150 Cascade Ct
Unit B
Colorado Springs, CO  80907
Email:  info@americanveteranheatingandair.com
*Defendant*

                                        */s/ Richard S. Siegel*
                                        Richard S. Siegel

23053215v4